UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

MARYANN COTTRELL and
RICHARD HOLLAND,

   CIVIL NO. 14-4831(NLH)(AMD)

   Plaintiffs,

  v.

MURPHY'S AUTO CARE AND PERFORMANCE
CENTER, doing business as MURPHY'S
AUTO, MATTHEW MURPHY, DANNY MURPHY,
SR., DANIEL MURPHY, JR., BILL SMITH
SNAP ON TOOLS, JOHN HEADLEY,
WASHINGTON TOWNSHIP POLICE, POLICE
OFFICER CPL. N. MEYERS, POLICE
OFFICER LT., POLICE DET. FRATTALLI,
JOHN AND JANE DOE,

   Defendants.

---

**APPEARANCES**:

RICHARD G. HOLLAND
MARYANN COTTRELL
31 SOUTH ACADEMY STREET
GLASSBORO, NJ 08028
  Appearing pro se

STEPHEN GUICE
LAW OFFICES OF STEPHEN GUICE, P.C.
413 CLEMENTS BRIDGE ROAD
BARRINGTON, NJ 08007
  On behalf of defendants Murphy's Auto Care and Performance
Center, doing business as Murphy's Auto, Matthew Murphy, Danny
Murphy, Sr., Daniel Murphy, Jr.

LOUIS D. TAMBARO
MARKS & KLEIN LLP
63 RIVERSIDE AVENUE
RED BANK, NJ 07701
  On behalf of Bill Smith Snap-on Tools

ROBERT A. BAXTER
KELLEY, WARDELL, CRAIG, ANNIN & BAXTER, LLC
41 GROVE STREET
HADDONFIELD, NJ 08033
        On behalf of the Washington Township defendants

**HILLMAN, District Judge**

        Presently before the Court are the motions of several defendants to dismiss plaintiffs' claims against them.  Also pending is plaintiffs' motion for leave to amend their complaint.  For the reasons expressed below, defendants' motions will be granted and plaintiffs' motion will be denied.

**BACKGROUND**

        Plaintiffs Maryann Cottrell and Richard Holland, appearing *pro se*, have been "long time advocates for the disabled." (Compl. ¶ 26.)  Ms. Cottrell is hearing impaired and is the mother of a severely disabled daughter.  Mr. Holland is Ms. Cottrell's daughter's secondary caregiver.

        Plaintiffs' advocacy is well known to this Court.[1]  As the

---

[1] To date, plaintiffs have filed nineteen actions in this courthouse as part of their efforts as "advocates for the disabled":

1:06-cv-01163-RMB-JS COTTRELL et al. v. GLASSBORO PUBLIC SCHOOL DISTRICT et al.
1:08-cv-01171-NLH-JS COTTRELL et al. v. ROWAN UNIVERSITY et al.
1:08-cv-01700-JEI-AMD COTTRELL et al. v. DANTE J. MASSO & SONS, INC. et al.
1:08-cv-01738-RBK-KMW COTTRELL et al. v. GOOD WHEELS et al.
1:08-cv-02827-JHR-JS COTTRELL et al. v. LONG SELF STORAGE, INC. et al.
1:08-cv-03340-JEI-AMD COTTRELL et al. v. ZAGAMI, LLC
1:08-cv-05418-NLH-KMW COTTRELL et al. v. J&R DISCOUNT LIQUOR GALLERY, INC.,
1:09-cv-00240-JBS-AMD COTTRELL v. WOODBURY NISSAN, INC. et al.
1:09-cv-01743-RBK-JS COTTRELL et al. v. HERITAGES DAIRY STORES INC. et al.
1:09-cv-01987-JBS-JS COTTRELL et al. v. BOBS LITTLE SPORT SHOP, INC. et al.
1:11-cv-00610-JHR-AMD COTTRELL et al. v. MATT BLATT, INC. et al.
1:11-cv-06662-NLH-AMD COTTRELL et al. v. FOSTERS et al.

Third Circuit summarized, "Holland and Cottrell live together and care for Cottrell's severely disabled child, and are advocates for the disabled.  They contact public authorities about businesses that do not provide required access for disabled persons, and lodge citizens' complaints regarding improper use of parking spaces designated for persons with disabilities." Cottrell v. Good Wheels, 458 F. App'x 98, 99 (3d Cir. 2012).

It is Plaintiffs' practice to document, usually through video in addition to their personal observation, instances of the unauthorized use of handicap-accessible parking spaces, and then report these violations to the business owners and the local police.  As a result of this conduct, business owners often "ban" plaintiffs from their property, which plaintiffs allege constitutes retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:6-1 et seq.  See, e.g., Cottrell v. Zagami, LLC, 537 F. App'x 46 (3d Cir. 2013); Cottrell v. Nicholson Properties, LLC, 2014

---

1:12-cv-01986-NLH-JS COTTRELL et al. v. NORMAN et al.
1:12-cv-02128-NLH-KMW COTTRELL et al. v. NICHOLSON PROPERTIES LLC et al.
1:13-cv-02847-NLH-KMW COTTRELL et al. v. RECREATION CENTER LLC et al.
1:14-cv-03309-NLH-KMW COTTRELL et al. v. DUFFIELD'S INC. et al.
1:14-cv-04831-NLH-AMD HOLLAND et al. v. MURPHY'S AUTO CARE CENTER et al.
1:14-cv-07159-NLH-KMW COTTRELL v. WAWA, INC. et al.
1:15-cv-02267-NLH-KMW COTTRELL et al. v. FAMILY PRACTICE ASSOCIATES WASHINGTON, PA et al.

WL 5390671, *1 (D.N.J. 2014); <u>Cottrell v. Rowan University</u>, 786
F. Supp. 2d 851, 853-54 (D.N.J. 2011) ("Plaintiffs are advocates
for the disabled, and they inform local authorities about
businesses that fail to maintain handicap accessible parking and
fail to discourage unauthorized use of handicapped parking
spaces. . . . Although plaintiffs dispute that their enforcement
activities caused any consternation to Rowan students, staff,
visitors or administration, . . . their conduct over the course
of several months resulted in Rowan University issuing them a
trespass letter banning them from campus.").

   The situation in this case started with the usual scenario.
Plaintiffs claim that on August 2, 2012, they were driving on
Delsea Drive in Washington Township, New Jersey when they
observed a Snap-on Tools truck parked in the only handicap
parking space provided at Murphy's Auto Care.  Mr. Holland drove
into the parking lot and Ms. Cottrell began videotaping the
alleged parking violation.  In the parking lot, Mr. Holland
turned the car around so Ms. Cottrell could videotape the front
of the truck.  Mr. Holland then continued to drive toward the
parking lot exit.

   At this point, the situation diverged from plaintiffs'
typical course because, according to plaintiffs, the owners of
Murphy's Auto Care, defendants Danny Murphy, Sr., Daniel Murphy,
Jr., and Matthew Murphy, and the driver of the Snap-on Tools

truck, defendant John Headley, apparently already knew of
plaintiffs and their methodology for documenting handicap
parking violations, and they instantly "retaliated" against
plaintiffs for their efforts.  Plaintiffs claim in their
original complaint that the four men surrounded plaintiffs' car
and Headley banged on the windows, sat on the back of the car,
and then moved to the passenger side to take pictures of Ms.
Cottrell videotaping.  Plaintiffs claim that Matthew Murphy
pressed his body against the driver's side door, took pictures
of Mr. Holland, leaned onto the surface of the car with this
hands, one of which was holding a cigarette, and then sat on the
hood.  Plaintiffs claim that Daniel Murphy, Jr. gave Ms.
Cottrell the middle finger gesture.  Plaintiffs claim that they
had been frightened by the defendants' conduct, and became even
more so when Matthew Murphy tried to open Mr. Holland's door.

Plaintiffs claim that Mr. Holland called the Washington
Township Police.  When the police arrived, plaintiffs claim that
the police did not ask them what had happened, but the police
spoke with the four defendants.  Mr. Holland was arrested for
"assault by auto."

Plaintiffs' proposed amended complaint contains more
allegations.  In their amendments, plaintiffs claim that the
police were told that Mr. Holland backed over Danny Murphy, but
Mr. Holland told the police that it was not true.  Plaintiffs

claim that police officers at the scene repeatedly stood in front of Ms. Cottrell's video camera, and one officer told her to turn it off.  Plaintiffs claim that the police retained her driver's license for 45 minutes, and when it was finally returned to her, she could not leave because Daniel Murphy, Jr. was standing behind the car, and the officer would not tell him to move.

Plaintiffs further claim in their proposed amended complaint that the four defendants made a video statement to the Washington Township Police Department, where Danny Murphy admits to standing behind plaintiffs' vehicle, and stating, "I put my hands on the truck to kind of get myself out of the way, my knee wanted to go the other way, then a crack maybe a pop and on the ground I went."  (Amend. Compl. ¶ 94.)  Plaintiffs claim that Danny Murphy caused his own injury and that he had a preexisting condition.

In their proposed amended complaint, plaintiffs relate that Ms. Cottrell filed a citizen's complaint against Murphy's Auto for allowing the Snap-on Tools truck to park in the handicap parking space.  Ms. Cottrell also filed a citizen's complaint against Snap-on Tools for illegally parking in the handicap spot, for which Headley pleaded guilty.  Plaintiffs further relate that a year earlier in June 2011, Ms. Cottrell had filed a citizen's complaint against Snap-on Tools for parking in a

handicap space in Glassboro.

Based on the August 2, 2012 incident, plaintiffs state that they filed harassment charges against all the defendants in Washington Township Municipal Court.  On April 19, 2013, Ms. Cottrell made a verbal request for discovery as a part of their harassment case, but Headley and Matthew Murphy spoliated evidence by deleting the pictures they took during the incident. Plaintiffs claim "nothing was done to defendants for spoliation," and that the judge and prosecutor "washed away" all the charges except the handicap parking violation that Headley pleaded guilty to.

Based on these allegations, plaintiffs claim that the Murphy's Auto Care and Snap-on Tools defendants have violated the ADA and NJLAD by retaliating against them for their protected activities.  Plaintiffs also claim that the Washington Township Police violated Mr. Holland's due process rights by not asking for his side of the incident.  In their proposed amended complaint, plaintiffs have added claims for malicious prosecution, "failure to enforce," and equal protection violations against the Washington Township Police Department defendants, and a claim for false imprisonment against the Murphys and John Headley.

Prior to plaintiffs filing their motion for leave to file an amended complaint, the Murphy's Auto Care and Bill Smith

Snap-on Tools defendants filed motions to dismiss plaintiffs'
claims against them.  Plaintiffs did not oppose these motions,
and instead filed their motion to amend.  The Washington
Township defendants filed a motion to dismiss based on the
claims in plaintiffs' proposed amended complaint.  Plaintiffs
filed an opposition to the Washington Township defendants'
motion.

**A.   Subject matter jurisdiction**

Plaintiffs have brought their claims under federal law, as
well as under New Jersey state law.  This Court has jurisdiction
over plaintiffs' federal claims under 28 U.S.C. § 1331, and
supplemental jurisdiction over plaintiffs' state law claims
under 28 U.S.C. § 1367.

**B.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.
Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well
settled that a pleading is sufficient if it contains "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under the
liberal federal pleading rules, it is not necessary to plead

8

evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"  Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . .");  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").  Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded

9

facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents

attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

## C.   Standard for Motion for Leave to Amend

Amendments to pleadings are governed by Federal Civil Procedure Rule 15, which provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities. Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989). An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Amendment of the

complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss.  <u>Jablonski v. Pan American World Airways, Inc.</u>, 863 F.2d 289, 292 (3d Cir. 1988).

**D.   Analysis**

Plaintiffs' case can be separated into two categories:  (1) plaintiffs' ADA and NJLAD retaliation claims against the Murphy's Auto Care and Snap-on Tools defendants, and (2) plaintiffs' constitutional violation and tort claims against the Washington Township defendants.  The Court will address each category in turn.

**(1) *ADA and NJLAD retaliation claims***

The Murphy's Auto Care and Snap-on Tools defendants have moved to dismiss plaintiffs' ADA and NJLAD retaliation claims for failure to sufficiently state their claims.[2]  They have also

---

[2] Plaintiffs' proposed amended complaint contains a claim against the Murphy's Auto Care and Snap-on Tools defendants for false imprisonment.   False imprisonment is "the constraint of the person without legal justification." <u>Mesgleski v. Oraboni</u>, 748 A.2d 1130 (N.J. Super. Ct. App. Div. 2000) (explaining that the tort of false imprisonment has two elements: (1) "an arrest or detention of the person against his or her will" and (2) "lack of proper legal authority or legal justification").  As a result of the analysis, <u>infra</u>, this is the only remaining claim in plaintiffs' proposed amended complaint. Because all of plaintiffs' federal claims are dismissed, to the extent that the Court would find this claim to be sufficiently pleaded, the Court would decline to continue exercising supplemental jurisdiction over this state law claim.  Thus, granting plaintiffs leave to proceed with this lone claim, without any independent basis for jurisdiction, would be futile.

moved to dismiss plaintiffs' claims for lack of standing.

To prove a claim of retaliation under the ADA and NJLAD, a plaintiff must first establish that (1) he was engaged in protected conduct; (2) an adverse action was taken; and (3) there is a causal link between the protected conduct and the adverse action. Good Wheels, 458 F. App'x at 100-01 (citing Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 757 (3d Cir. 2004) (stating elements of prima facie case of retaliation in an ADA claim); Victor v. State, 4 A.3d 126, 141 (N.J. 2010) (stating elements of a prima facie case of retaliation in a NJLAD claim)).

As in their other cases, plaintiffs readily meet the pleading standard for these retaliation claims simply by describing the typical scenario of their advocacy efforts. Plaintiffs allege that their observing and videotaping of handicap parking violations at business establishments is protected conduct, when the business owners ban them or otherwise restrict them from the premises, that action constitutes an adverse action, and plaintiffs' "protected conduct" is the cause of the business owners "adverse actions."

Although in their motions to dismiss, the business owners often deny that their alleged "adverse actions" were because of plaintiffs' efforts to advocate for the disabled, but rather because plaintiffs were disruptive to their businesses and

harassing to other patrons, those explanations and defenses cannot be considered at the motion to dismiss stage.  Thus, allegations of adverse conduct, sufficiently pled, will allow plaintiffs' ADA and NJLAD retaliation claims to survive a Rule 12(b)(6) challenge, and the case will proceed through discovery.[3]

Plaintiffs' ADA and NJLAD retaliation claims have been found, however, to be dismissible at the pleading stage for lack of standing.  See, e.g., Cottrell v. Heritages Dairy Stores, Inc., 2010 WL 3908567, *2 (D.N.J. 2010); Cottrell v. Bobs Little Sport Shop, Inc., 2010 WL 936212, *1 (D.N.J. 2010); Cottrell v. Zagami, LLC, 2009 WL 1416044 (D.N.J. 2009).  Pursuant to Federal Rule of Civil Procedure 12(b)(1), courts have dismissed plaintiffs' similar ADA/NJLAD retaliation claims for lack of subject matter jurisdiction because plaintiffs sought prospective, injunctive relief, but their claims did not allege concrete plans to return to business establishment, thus failing to show that there was a real and immediate threat that they would be harmed by the defendants' allegedly retaliatory conduct

---

[3] Defendants in this case contend that plaintiffs manufacture their own retaliation claims, which cannot be dismissed and must be litigated at great expense to the defendants, in bad faith, stretching the intention of the ADA and NJLAD "to the farthest extent of all common decency," bringing "upon the courts needless litigation and to intentionally harass businesses." (Docket No. 14, at 13-14.) To the extent these claims assert factual or affirmative defenses, we do not address them here, even if true.

in the future.  See cases cited, supra; see also Lujan v.
Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) (citations
and quotations omitted) (explaining that "the irreducible
constitutional minimum of standing contains three elements": (1)
the plaintiff must have suffered an invasion of a legally
protected interest which is (a) concrete and particularized, and
(b) actual or imminent, not conjectural or hypothetical; (2)
there must be a causal connection between the injury and the
conduct complained of--the injury has to be fairly traceable to
the challenged action of the defendant, and not the result of
the independent action of some third party not before the court;
and (3) it must be likely, as opposed to merely speculative,
that the injury will be redressed by a favorable decision).

Plaintiffs, as the parties invoking federal jurisdiction,
have the burden of establishing these elements.  Lujan, 504 U.S.
at 561.  In this case, plaintiffs have failed to do so.  As a
primary matter, plaintiffs have not opposed the Murphy's Auto
Care and Snap-on Tools defendants' motions to dismiss, which
challenge plaintiffs' standing to bring their claims.  This is
fatal to their case.  Id. ("Since [the standing elements] are
not mere pleading requirements but rather an indispensable part
of the plaintiff's case, each element must be supported in the
same way as any other matter on which the plaintiff bears the
burden of proof, i.e., with the manner and degree of evidence

required at the successive stages of the litigation.").

Even if, however, plaintiffs had opposed the motions, the circumstances of their claims demonstrate that enjoining defendants from retaliating against plaintiffs in the future would be inconsequential.  Plaintiffs claim that they were driving on Delsea Drive when they noticed a Snap-on Tools truck parked in the handicap parking space at Murphy's Auto Care. Plaintiff's complaint does not contain any allegations that they intended to patronize the business that day, had patronized the business in the past, or intend to patronize the business in the future.  Therefore, providing plaintiffs with the relief they seek – an injunction against the defendants from retaliating against them for their documentation of handicap parking violations at Murphy's Auto Care – would not redress an actual or imminent injury because there is no allegation that it will reoccur.

In addition to the general prudential principals of standing, another element of standing exists in ADA cases where a plaintiff brings suit for injunctive relief.  In ADA cases, "[t]he proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated.  Although Congress can expand standing by enacting a law enabling someone to sue on what was already a de facto injury to that person, it cannot confer standing by statute

alone." <u>Doe v. National Bd. of Medical Examiners</u>, 199 F.3d 146, 153 (3d Cir. 1999) (citing <u>Lujan</u>, 504 U.S. at 578).

In this case, plaintiffs' allegations confirm that they did not personally suffer an injury as a result of their ADA-protected activities.  Plaintiffs' complaint relates that they were merely driving by Murphy's Auto Care when they noticed the Snap-on Tools truck parked in the handicap parking space.  They do not claim that they intended to patronize Murphy's Auto Care but were prohibited from doing so because the Snap-on Tools truck prevented them from parking in the handicap parking space. Additionally, the handicap parking violation was perpetrated by a truck not under the control of Murphy's Auto Care.  Moreover, it is a transient condition, with no allegations that plaintiffs' access to parking at Murphy's Auto Care would be prevented if they decided to visit the business in the future. Accordingly, plaintiffs also lack standing to bring their retaliation claims because they have not alleged that they suffered an actual injury relating to the alleged ADA and NJLAD violations.  <u>See Cottrell v. Wawa</u>, Civ. A. 14:7159 (NLH/KMW) (Docket No 4 at 9) (citing <u>Lyons</u>, 461 U.S. at 109 (explaining that injunction without imminent violation of law is inappropriate)) ("Even though Ms. Cottrell has purportedly visited the Wawa facility in the past and continues to return to the property, the complaint describes only one instance of a

17

delivery truck parked in the handicap parking space.  This isolated past incident does not support the conclusion that there is a likelihood that the injury will reoccur when Ms. Cottrell returns to the Wawa premises.  Ms. Cottrell therefore does not meet her burden of demonstrating that she is under threat of suffering an "injury in fact" that is concrete, particularized, and actual or imminent.  As such, at this time she fails to demonstrate that she has standing to seek prospective injunctive relief against Defendants.").

The objective of plaintiffs' advocacy actions is to eliminate barriers to disabled people's access to businesses. Plaintiffs effect that worthy goal by recording evidence of transgressions and filing citizen's complaints against the perpetrators, which, as demonstrated by Snap-on Tools' guilty plea in this case, provides vindication for plaintiffs and the disabled people they champion.  Beyond those efforts, plaintiffs' use of the ADA and NJLAD anti-discrimination and anti-retaliation laws cannot succeed unless they allege that they have suffered, or will likely again suffer, a cognizable injury that can be remedied by a court-ordered injunction.[4]

---

[4] The Court emphasizes that plaintiffs lack standing to bring their present claims because plaintiffs are only seeking prospective, injunctive relief for their allegations of ADA and NJLAD retaliation.  If plaintiffs could maintain claims under the ADA and NJLAD that provided for compensatory damages, their allegations against the Murphy and Snap-on Tools defendants,

Accordingly, plaintiffs' ADA and NJLAD retaliation claims must
be dismissed for lack of standing.

### (2) Plaintiffs' constitutional violation and tort claims against Washington Township defendants

In their proposed amended complaint, plaintiffs claim that
when Mr. Holland was arrested for assault by auto, the
Washington Township police officers only considered the
defendants' version of events, and they would not let plaintiffs
tell their side of the story.  Plaintiffs also claim that the
defendants were allowed to roam free, while the plaintiffs were
forced to remain in their car.  Plaintiffs contend that the
police officers' conduct was a result of plaintiffs having past
problems in Washington Township as a result of their advocacy
efforts.  Plaintiffs claim that defendants' conduct constituted
malicious prosecution, a violation of plaintiffs' due process
rights under the Fifth Amendment, and a violation of plaintiffs'
equal protection rights under the Fourteenth Amendment.
Plaintiffs also claim that defendants should be held liable for
failing to enforce the law against parking illegally in a
handicap space.

All of plaintiffs' claims[5] against the Washington Township

---

when accepted as true, demonstrate an actual injury in fact.

[5] Plaintiffs' original complaint contained claims against the
Washington Township defendants for "Violation of Civil Rights
Act of 1983," "Violation of the 14th Amendment," and "New Jersey

defendants fail for the following reasons:

(1) Plaintiffs have not alleged that the defendants' actions were directed by any policy or custom of Washington Township.  To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Municipalities and other local government units are among those "persons" to which § 1983 liability applies.  Monell v. New York City Dep't of Social Services, 436 U.S. 658, 690 (1978).  Local governments, however, cannot be held liable for the actions of their employees solely based on the doctrine of respondeat superior.  Id. at 691-95; Bielevicz v. Dubinon, 915 F. 2d 845, 849-50 (3d Cir. 1990).  In order to successfully state a claim for municipal liability, a plaintiff must allege that the employees' actions were pursuant to a policy or custom of the municipality itself.  Monell, 436 U.S. at 694; Watson v.

---

Civil Right Act" (sic).  The Court considers those claims in tandem with the claims in plaintiffs' proposed amended complaint.  Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) (amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss).

Abington, 478 F.3d 144, 155 (3d Cir. 2007).  Plaintiffs have
failed to do so here.

(2)  Plaintiffs' claims are asserted against Washington
Township.  The police department is not a separate legal entity.
Boneberger v. Plymouth Township, 132 F.3d 20, 25 n.4 (3d Cir.
1997) (a municipality and its police department are a single
entity for the purposes of § 1983 liability).  Plaintiffs'
claims against the individual officers do not specify whether
they are made in their individual and official capacities, but
any official capacity claims are actually claims against
Washington Township.  See Monell v. New York City Dept. of
Social Services, 436 U.S. 658, 690 n.55 (1978) (official
capacity suits "generally represent only another way of pleading
an action against an entity of which an officer is an agent").
Thus, plaintiffs' claims against the police department and
against the individual officers in their official capacities
must be dismissed.

(3) Plaintiffs' Fifth Amendment claim cannot stand against
state actors.  Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir.
2009) (citation omitted) ("[T]he due process clause under the
Fifth Amendment only protects against federal governmental
action and does not limit the actions of state officials.").

(4) Plaintiffs do not state a claim for an Equal Protection
violation under the Fourteenth Amendment because they have not

pleaded how they were treated differently from similarly situated persons.  See City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike); Nordlinger v. Hahn, 505 U.S. 1, 10 (1992), quoted in Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 109 (3d Cir. 2011) ("The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."); Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 368 (2001) (explaining that "the result of Cleburne [City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, (1985)] is that States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational").

(5) Plaintiffs' tort claim of malicious prosecution fails for noncompliance with the New Jersey Tort Claims Act.  The NJTCA provides, "No action shall be brought against a public entity or public employee under this Act unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this chapter."  N.J.S.A. 59:8-3.  A

tort claim notice "must be served upon the public entity within 90 days of the accrual of the claim, and failure to do so will forever bar the claimant from recovering against a public entity or public employee." N.J.S.A. 59:8-8.  The New Jersey Tort Claims Act, N.J.S.A. 59:8-3, applies to both intentional and non-intentional torts asserted against public employees. Lassoff v. New Jersey, 414 F. Supp. 2d 483, 490 (D.N.J. 2006) (citing Velez v. City of Jersey, 180 N.J. 284, 286, 850 A.2d 1238 (2004)).  Plaintiffs do not dispute that they did not comply with the NJTCA.

(6) Plaintiffs' claim for defendants' failure to enforce N.J.S.A. 39:4-207.9 fails because "there is no legal support for the proposition that this statute can be used as a private cause of action." Rothman v. City of Northfield, 716 F. Supp. 2d 369, 373 (D.N.J. 2010).  The provision provides, "A person who owns or controls a parking area which is open to the public  . . . shall be responsible for assuring that access to these special parking spaces and to curb cuts or other improvements designed to provide accessibility for handicapped persons is not obstructed." N.J.S.A. 39:4-207.9(a).  In determining whether a statute implicitly creates a private cause of action, courts should consider (1) whether plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether there is any evidence that the Legislature intended to create a private

cause of action under the statute; and (3) whether such an implied private cause of action would be consistent with the underlying purposes of the legislative scheme. Id. (citing Matter of State Comm'n of Investigation, 108 N.J. 35, 527 A.2d 851, 854 (1987) (quoting Cort v. Ash, 422 U.S. 66, 78 (1975)). "There is nothing in the text of the statute itself which suggests N.J.S.A. 39:4-207 creates a private right of action, and the rest of the statute deals with the removal of snow and ice and various monetary penalties for violating these removal processes." Id. Thus, plaintiffs' attempt to assert a private cause of action under this provision must fail.

Consequently, because none of plaintiffs' claims in their original and proposed amended complaint are maintainable against the Washington Township defendants, plaintiffs' complaint must be dismissed and their request for leave to file an amended complaint must be denied.

<u>**CONCLUSION**</u>

For the reasons expressed above, defendants' motions to dismiss plaintiffs' complaint and disallow the filing of plaintiffs' proposed amended complaint shall be granted. An appropriate Order will be entered.


Date: June 8, 2015             ___s/ Noel L. Hillman___
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.